## ACCUMULATOR CO. v. CONSOLIDATED ELECTRIC STORAGE CO. et al.

### (Circuit Court, D. New Jersey. December 13, 1892.)

1. PATENTS FOR INVENTIONS—INJUNCTION—COMITY BETWEEN CIRCUITS—CONTEMPT.

   Where a court issues an injunction to prevent infringement of a patent solely upon the authority of a decision in another circuit in a suit between the same parties, it will, on a motion for an attachment for contempt in violating the injunction, follow the construction which was placed upon the patent in such other circuit.

2. SAME—CONTEMPT—EVIDENCE.

   In contempt proceedings to punish an alleged violation of an injunction against the infringement of reissued letters patent No. 11,047, granted December 17, 1889, to Joseph Wilson Swan, assignor to the Electrical Accumulator Company, for an improvement in secondary batteries, the question being as to whether, in the plates now made by defendants, the active material, or material to become active, is packed in the perforations of the plate exclusively, or is it also made to adhere to the surface of the plate, the court will not adjudge them guilty of contempt when there is a direct conflict between the expert witnesses as to the fact; for, the proceeding being criminal in its nature, defendant is entitled to the benefit of any reasonable doubt.

In Equity. Bill by the Accumulator Company against the Consolidated Electric Storage Company for infringement of reissued letters patent No. 11,047, granted December 17, 1889, to Joseph Wilson Swan, assignor to the Electrical Accumulator Company, for an improvement in storage batteries. An injunction was heretofore granted on the authority of the decision by Judge Coxe in the circuit court for the southern district of New York in Electrical Accumulator Co. v. New York & H. R. Co., 50 Fed. Rep. 81. The cause is now heard on a motion for attachment against defendants as for a contempt in violating the injunction. Motion denied.

F. H. Betts, for the motion.
William H. Kenyon and C. L. Mitchell, opposed.

GREEN, District Judge. The defendants are charged with the willful violation of the injunction heretofore granted by this court, whereby the defendants were commanded and enjoined—

"Forever to desist from directly or indirectly making or causing to be made, using or causing to be used, or vending to others to be used in any manner, any secondary batteries containing or embodying the invention secured to Joseph Wilson Swan on the 17th day of December, 1889, by letters patent No. 11,047, for an improvement in secondary batteries, which invention was described therein as follows: 'A perforated or cellular plate for secondary batteries, having the perforations or cells extending through the plate, and the active material, or materials to become active, packed in said perforations or cells only, substantially as described.'"

It is alleged by the complainants that the structure now made, used, and sold by the defendants is practically the same structure which they were enjoined from using, making, or selling, and that, if such structure is in any respect whatever different therefrom, the difference is an unsubstantial one, introduced for the very purpose

of evasion, and, in effect, still appropriates the essence of the invention secured to Mr. Swan.

The cause in which the enjoining decree of this court was made was never argued or presented to it for adjudication upon its merits. A suit wholly identical in character, between practically the same parties, touching the same invention, and alleging the same acts and causes of infringement, was at issue in the circuit court for the southern district of New York, and was there finally determined in favor of the complainants; the decree upholding the letters patent referred to, in all respects, and sustaining the invention thereby secured to Mr. Swan as clearly having patentable novelty. Electrical Accumulator Co. v. New York & H. R. Co., 50 Fed. Rep. 81. As a result of this adjudication, the defendants were duly enjoined by that court from all further infringing acts. This adjudication being brought to the attention of this court, upon the well-known doctrine of comity, it was immediately followed in this circuit; and, practically without any contest, an enjoining decree similar to the one made in New York was made in this circuit. It follows that the construction which the circuit court in the district of New York gave to the letters patent in this case is the construction supposed to be adopted by this court in its action granting the injunction; and such construction will be adhered to in the consideration of this motion. In fact, upon the somewhat hurried examination that has been given to the matters involved on this motion, I cannot see how any other or broader construction could be given to the letters patent than has been given in the suit referred to by his honor, Judge Coxe. The only claim made by the inventor expressly declares that the main characteristic of his invention consists in a plate for secondary batteries, having cells or perforations extending through the plate, and the active material, or material to become active, packed in said perforations or cells only. The word "only" clearly means "exclusively," and that the inventor meant, therefore, to say that in his invention the active material, or the material to become active, was to be placed or packed in the perforations or cells of the plate, to the entire exclusion of every other receptacle or part of the plate. Judge Coxe, in his opinion, tersely says:

"The real invention of Swan was the combination of a support, plate, or grid, a perforated plate, with active material so combined therewith as to exist only in the perforations."

I concur fully in that conclusion.

Adopting, then, this as the true and legal definition of the invention of Mr. Swan, and which the defendants were enjoined from using, making, or vending, does the structure now made and sold by them in any wise infringe it? If it does, they have undoubtedly violated the mandatory order of this court. If it does not, this motion must go for nothing. The defendants place their sole defense to this serious charge upon the fact that not only do they pack the active material in the perforations of a grid or supporting plate, but, as well, and as an essential part of that structure, pack it upon the surface of the plate; and they insist that grids forming part of a storage battery having active material packed, pressed upon, or

otherwise affixed to the face of the plate, outside of the perforations, are not to be included within the purview of the injunction. The grid now made by the defendants has been somewhat changed in construction since the injunction was issued. The network of the crossbars within the outer supporting framework, that form the perforated portion, is considerably thinner, measuring in a direction through the thickness of the plate as a finished plate, than in the old grid. The perforations are smaller. There are now 625 perforations in the present grid. In the old grid, there were 400. The outside frame is slightly raised above the level of the inside division or network bars, and the edges of these bars are thinner, and more knife-like, than formerly. But these differences are mere matters of detail, not in any wise affecting the question under consideration. If there were no other explanations given in excuse for the alleged infringements than such as are based upon these changes in structure, the defendants would be wholly without justification. But they claim that, not only are the grids differently constructed, but, as well, that the active material which they use is packed or made to adhere to the surface of the grid, and that such a combination of perforated plate and active material, packed outside the perforations, and on the surface of the plate, is not within either the terms of the Swan letters patent, nor the construction placed upon them by the court in New York.

The complainants deny, in toto, that any of the active material in the defendants' plates is outside the perforations. On this point, Mr. Vansize, in his affidavit, says:

"The said batteries [i. e., those made since the injunction by the defendants] are composed of perforated plates of metal, [that is, lead, or an alloy of lead.] The perforations extend completely through the plate, and are substantially equidistant, with respect to each other. The active material is packed in the perforations, and completely fills the perforations, and such active material is packed within the perforations only." "There is absolutely no difference between the battery plates and the cells of battery formerly manufactured by the defendant company, and adjudged to be an infringement."

In a later affidavit, he says:

"In most of the plates heretofore examined by me, and referred to in my former affidavit, the active material is substantially confined to the perforations only. There may be isolated points upon the surface of these plates, or imperfections or inaccuracies, which give lodgment to small quantities of the active material; but such active material is not present, in any useful quantity, outside the perforations."

And again:

"For all substantial purposes, any active material left upon the surface of any of the divisions is of no value, because so small in amount, and so thin, that it has no coherence or permanency, but will flake off as soon as the battery is put into use, and must be presumed to have been so intended by the makers."

On the other hand, expert witnesses called by the defendant as positively declare that the amount of active material adhering to the surface of the plate, and not packed in the perforations, is quite thick and substantial. Prof. Brackett, in his affidavit, declares that, from inspection of the plates manufactured by defendants, from 15

to 20 per cent. of the active material is outside the perforations. Mr. Salom testifies that—

"Such surface layer of active material as is found on all of defendants' plates is, when taken by itself, and entirely apart from such active material as is packed in the perforations, a more substantial and efficient layer, and vastly more substantial and efficient layer of active material for the purpose of a storage battery in the ordinary uses of such a battery, than the active layer of the well-known Plaute battery which is procured by electrical disintegration of the leaden support itself."

It is extremely difficult, not to say hazardous, for a court to dissect, analyze, and weigh affidavits such as these, taken ex parte, and so contradictory in material statements, and to adjudge where the truth lies.   To aid the court in arriving at a just conclusion, the witnesses should be subject to a most rigid cross-examination.   Failing that, there must, of necessity, be left in the mind a doubt, of which, in proceedings of this nature, the defendant is entitled to the benefit.   Is this structure of the defendants the same as the structure in the New York case?   The affirmative is as strongly asserted by the one side as the negative is by the other.   If it be true that the active material adhering to the surface of the plate now made by the defendants is so substantial as to be in quantity 15 to 20 per cent. of the whole, I can hardly hold that the structure is the same as heretofore adjudicated to be an infringement of the complainant's plate.   In that plate the material outside the perforations was admittedly so very slight in quantity as to be negligible.   Personal inspection of the plate in question has not destroyed the doubt.   I frankly say that, as a nonexpert, I am unable to see how the adhesion of the minute quantity of active material upon the knife-blade edge of the division bars of the defendants' grid can possibly amount to the percentage of the whole as testified to.   It is to me almost incredible.   But the sworn statement is before me, and I cannot reject it.   Two witnesses assert it as a fact.   But one witness contradicts it.   I cannot, under such circumstances, give any great credit to the evidence of mere eyesight.

With this doubt, then, as to the character of the defendants' grid, existing, I think I should not grant the motion for attachment. This proceeding is criminal in its nature and character, and the same rule should govern as in the trial of indictments.   The burden of proof establishing violation of the injunction is upon the complainant, and the defendants are entitled to the benefit of any reasonable doubt.   The motion is denied.