**Oliver F. MARSTON**

v.

**J. C. PENNEY COMPANY, Inc.**

**Civ. A. No. 3540.**

United States District Court,
E. D. Virginia,
Richmond Division.

March 8, 1971.

Herndon P. Jeffreys, Jr., Richmond, Va., J. Hanson Boyden, Washington, D. C., Alfred P. Ewrt, New York City, for plaintiff.

Edward A. Marks, Jr., Richmond, Va., W. Brown Morton, Jr., James N. Dresser, Washington, D. C., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

This patent case is before the Court for the second time, currently on plaintiff's motion to punish for contempt. Prior proceedings are summarized in the opinion of the Court of Appeals, Marston v. J. C. Penney Co., 353 F.2d 976 (4th Cir. 1965), cert. den., 385 U.S. 974, 87 S.Ct. 515, 17 L.Ed.2d 437 (1966). The Fourth Circuit affirmed therein this Court's ruling that claims 1 and 2 of the Marston patent, No. 2,715,231, were valid, and determined, contrary to the district court, that certain articles sold by Penney infringed. On remand damages were determined after trial, and an injunction was entered. That order does not in terms forbid all future infringement; it does, however, recite the appellate ruling that the defendant's articles were covered by Marston's patent and forbids the manufacture, use, or sale, of further units of the accused

structure "or other articles which embody the buoyant filler pad structure [of certain exhibits] or any * * * other articles embodying a buoyant filler pad structure * * * that is a merely colorable or patently insubstantial variation of the buoyant filler pad structure of said exhibits * * *."

Claim 1 of the patent in issue reads as follows:

1. A buoyant, flexible, filler pad comprising a plurality of strip portions arranged in laterally disposed relation, each said strip portion comprising a tube of flexible thermoplastic resinous material having opposed parts of the tube wall completely united together in fluid sealing relation at spaced intervals to form an individually sealed link section between each adjacent pair of sealed parts, each said sealed part of one strip portion being arranged in laterally aligned relation to a sealed part of an adjacent strip portion to form a plurality of laterally disposed rows of aligned sealed parts in said pad, and a connecting strip overlying each said row of sealed parts and united to each sealed part in said row, each said link section being in spaced relation to adjacent link sections of laterally disposed strip portions to provide fluid circulating openings therebetween extending perpendicularly through said pad.

Claim 2 differs in that in place of a "tube" it embraces a "hollow, elongated body * * * the wall of said body being continuous in cross-section," the walls of which are "completely heat-sealed" at intervals, and the strip portions are "parallel."

A hearing has been held on the contempt motion. Numerous exhibits were introduced, some of which were products alleged to have been marketed by Penney in violation of the outstanding order. The plaintiff testified in person and by deposition. In his deposition he identified certain of the articles; the source of some has been stipulated too. The accused articles are all pieces of

outdoor furniture, constructed of plastic webbing on a rigid frame.

Defendant's exhibits DXC1, DXC2, and DXC3 are typical of those sold by Penney during the 1969 season.[1]

Plaintiff's exhibit 2 is the article referred to in the decree as exhibit K. Plaintiff's exhibit 5 was purchased from a store not affiliated with Penney on August 28, 1969. Defendant's exhibit D is a chaise which was marked as exhibit 5 in the 1968 damage trial; this should be distinguished from exhibit 5 referred to in the decree.

Penney contends that its currently accused products neither infringe the patent nor violate the decree because they embody significant departures from the items which have been found to infringe. The walls of the laterally aligned tube sections in the structures now attacked allegedly are heat-sealed to each other and to the connecting strips in such a way that individual airtight tubular cells do not result. The seals are now made, allegedly, not in continuous fashion across the tubes, but at intervals so that fluid may flow around and past them.

At the hearing Arthur B. Miller, a former patent examiner, testified to comparative studies which he made of the patent claim, of plaintiff's exhibit 2, which infringes, and of defendant's exhibit A, which it is stipulated is typical of Penney's products marketed in 1969. The parties also agree that if the tube heat-seals in defendant's exhibit A are complete, the decree has been violated. Mr. Miller could only say that an external examination of Penney's 1969 model did not reveal to him whether or not the seals were complete.

A second witness, Julian M. Weaver, a chemist, examined plaintiff's exhibit 14, which was bought from Penney in 1969. He cut away sections of tubing containing heat seals and testified that some joints would pass no air when he tried to blow through with mouth pressure. "Possibly 80 per cent" or "80 per cent or more" of the joints, he said, were sealed so as to form fluid tight chambers. Moreover, he said, a portion of Penney's structure would float, although the plastic of which it is made is heavier than water.

The defense offered evidence in the form of autoptic profference; a courtroom experiment was conducted. Sections of tubing were cut from defendant's exhibit DXC2, marketed subsequently to the decree; these segments are defendant's exhibit DXE1 through DXE5. Counsel for Penney blew a fluid —cigarette smoke—past the seals in the tubes. Of thirteen seals tested, only one would not pass smoke. Some might regard this as proof only of a litigator's lung power, but to the Court it was persuasive. Accordingly the Court finds on the evidence now before it that the plastic tubes in DXC2 are not separated into fluid tight compartments. Closed cells could be created only if two adjoining seals on the same tube are complete. Statistically this is quite improbable. On this showing the plaintiff has failed on this point to carry the substantial burden of proof which is his in a contempt proceeding.

Penney also submitted in evidence a patent allowed subsequently to Marston's, that of Militano, No. 3,476,169. The Court does not see the relevance of this patent or its issue and gives it no weight.

Each claim submitted in the course of patent office proceedings which resulted in the allowance of the claims of patent No. 2,715,231, contained the element of a tube divided by seal portions into fluid tight compartments. Marston described tube walls as "completely united together in fluid sealing relation" (original claims 1, 2, 4–14, 17, 19), or claimed "individually sealed link sections" formed to enclose gas under slight pressure (original claim 3), or included tube walls "completely united together to form an individually sealed link section between each adjacent pair of sealed

---

1. DXC1 is also marked DXA; DXC2 is marked DXB, and DXC3 is marked DXC.

portions" (original claims 15, 16, and 20), or claimed walls "completely heat-sealed together * * * to form an individually fluid sealed cell" (original claim 18).

Penney argues that under the facts shown it would be improper for Marston to proceed against the current products by means of a motion to hold Penney in contempt; rather an original or supplemental complaint should be filed. The issue, of course, on a contempt motion is a violation *vel non* of the decree, not patent infringement, Artvale, Inc. v. Rugby Fabrics Corp., 303 F.2d 283 (2d Cir. 1962). However, the proceedings on a contempt motion need not be summary, and they have not been in this case. If the plaintiff's decree is to have effect, it must be enforceable by the contempt power in some cases. The general rule is that a party may seek such relief if substantial collateral issues are not raised, Great Lakes Carbon Corp. v. Eagle Lumber Dealers Supply Co., 402 F.2d 106 (7th Cir. 1968), and the claim is that an infringing device varies only colorably from that found to violate the patent, McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230 (10th Cir.), cert. den. 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968). Other courts have treated a contempt motion as the proper context wherein to litigate complex questions of infringement, including the doctrines of equivalents and file wrapper estoppel, Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp., 395 F.2d 92 (4th Cir. 1968); cert. den., 393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 562 (1969); Chemical Cleaning, Inc. v. Dow Chemical Co., 379 F.2d 294 (5th Cir. 1967), cert. den. 389 U.S. 1040, 88 S.Ct. 777, 19 L.Ed.2d 829 (1968); Siebring v. Hansen, 346 F.2d 474 (8th Cir.), cert. den., 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); Baltz v. The Fair, 279 F.2d 899 (7th Cir. 1960); Carter Products, Inc. v. Colgate-Palmolive Co., 269 F.2d 299 (4th Cir. 1959); Kiwi Coders Corp. v. Acro Tool & Die Works, 250 F.2d 562 (7th Cir. 1957); Baltz v. Walgreen

Corp., 198 F.Supp. 22 (W.D.Tenn.1961). Marston's contentions may properly be considered in a proceeding of this nature.

The injunction, like the patent itself, is read in terms of prior art and file history, for it is not to be construed to grant the patentee greater rights than were his on the issue of the patent. Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp., *supra*, 395 F.2d 96. Moreover, it is read in terms of the preceding litigation which gave rise to the decree, at least to the extent that the plaintiff will not be permitted to maintain, in seeking enforcement, a position inconsistent with that he took in defending the patent's validity. In *Ransburg* certain patents were distinguished from prior art in earlier proceedings establishing validity on the same basis which distinguished them from the defendant's products, attacked in the contempt proceeding. The plaintiff was held not to be entitled to protection from a practice which it had earlier disclaimed.

The general rule governing infringement is that a patent is violated only if "every essential element of the described combination, or its equivalent, is embodied in the" accused device, Marston v. J. C. Penney Co., *supra*, 353 F.2d 985; Bullard Co. v. General Electric Co., 348 F.2d 985 (4th Cir. 1965); Power Curbers, Inc. v. E. D. Etnyre & Co., 298 F.2d 484 (4th Cir. 1962); Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670 (4th Cir. 1961); Johnson & Johnson v. Carolina Lee Knitting Co., 258 F.2d 593 (4th Cir. 1958). Here individual fluid sealed cells do not form part of the accused articles. Infringement in the classic sense does not exist, and Penney cannot be in contempt on that basis.

Marston urges, however, that the structure violates the injunction and the patent because it incorporates an equivalent substitute element.

"To temper unsparing logic and prevent an infringer from stealing the benefit of an invention," a patentee

may invoke this doctrine [of equivalents] to proceed against the producer of a device "if it performs substantially the same function in substantially the same way to obtain the same result." Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42 [50 S.Ct. 9, 74 L.Ed. 147]. The theory on which it is founded is that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Machine Co. v. Murphy, 97 U.S. 120, 125 [24 L.Ed. 935]. The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, Imhaeuser v. Buerk, 101 U.S. 647, 655 [25 L.Ed. 945], although the area of equivalence may vary under the circumstances. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608 [70 S.Ct. 854, 94 L.Ed. 1097] (1950). See also, Welch v. General Motors Corp., No. 14,468, mem. decis. (4th Cir.), aff'g. Civil Action No. 232–69–R, mem. decis. (E.D.Va.1970); General Instrument Corp. v. Hughes Aircraft Co., 399 F.2d 373 (1st Cir. 1968); Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp., *supra*; Blaw-Knox Co. v. Hartsville Oil Mill, 394 F.2d 877 (4th Cir. 1968); Chemical Cleaning, Inc. v. Dow Chemical Co., *supra*; Borg-Warner Corp. v. Paragon Gear Works, Inc., 355 F.2d 400 (1st Cir. 1965), cert. dismissed, 384 U.S. 935 [86 S.Ct. 1461, 16 L.Ed.2d 536] (1966); Marvel Specialty Co. v. Bell Hosiery Mills, Inc., 330 F.2d 164 (4th Cir.) cert. den. 379 U.S. 899 [85 S.Ct. 187, 13 L.Ed.2d 175] (1964); Nickerson v. Bearfoot Sole Co., 311 F.2d 858 (6th Cir. 1962), cert. den. 375 U.S. 815 [84 S.Ct. 48, 11 L.Ed.2d 50] (1963); Entron of Maryland, Inc. v. Jerrold Electronics Corp., *supra*; Foster Metal Products, Inc. v. Jacoby-Bender, Inc., 255 F.2d 869 (1st Cir. 1958); Long Manufacturing Co. v. Holliday, 246 F.2d 95 (4th Cir. 1957), cert. den. 355 U.S. 926 [78 S.Ct. 384, 2 L.Ed.2d 357] (1958); Gunter & Cooke, Inc. v. Southern Electric Service Co., 256 F. Supp. 639 (M.D.N.C.1966), aff'd. 378 F.2d 60 (4th Cir. 1967).

The application of the doctrine of equivalency is complicated in this case in that Penney has applied a structure with resemblances to Marston's to a use not clearly envisaged by the plaintiff. What Marston designed as a device for cushioning and floatation purposes Penney has employed as a stress-bearing web, although cushioning and floatation are not inconsistent with this use. Equivalency must be determined with reference to the patented structure, rather than the articles earlier found to infringe, for the injunction grants no rights that the patent did not confer.

To be equivalent, an accused structure must perform the same task using the same basic methods as were patented. The current Penney products cushion the weight they support, as would Marston's structure, but they do so by compressing the air they contain and spreading it between interconnecting cells as well as by means of the stretching of the flexible tubing. The distinction is simple, but the Court is dealing with simple articles. Another difference lies in that the Penney articles do not provide the inherent puncture-limiting feature of Marston's patent; if one cell is opened, air escapes from, and liquid will be admitted to, adjoining cells via the open joints.

Buoyancy likewise, if provided at all by the defendant's article, is afforded by means other than heat-sealing the plastic tubes; in the furniture in evidence sealing may be accomplished by tightly wrapping the tubes over frame members. It is true that buoyancy of the finished product is not a prerequisite to infringement, Marston v. J. C. Penney Co., *supra*, 353 F.2d 986, but the term is

merely another way of describing the airtight nature of Marston's structure.

The Fourth Circuit has set forth tests for finding equivalency:

> In determining the extent of the range of equivalents, however, we must consider the state of the prior art, the novelty and contribution of the claimed invention, the nature and extent of the differences between the patented and the accused devices, the scope of the claim of the patent and the limitations inherent in it and other surrounding circumstances. Long Manufacturing Co. v. Holliday, *supra*, 246 F.2d 100.

It may be that the departures from the Marston patent were obvious alterations whereby old elements were discarded for the rather simple substitute of partial seals. Prior art proved in administrative and judicial proceedings demonstrates that Marston's creation was not a pioneer invention, however, and it is not entitled therefore to a wide range of equivalents. Given the substantial differences in function and results which distinguish Penney's products from the patent, the Court cannot find them equivalent. Blaw-Knox Co. v. Hartsville Oil Mill, *supra*.

Even if the pad of Penney's products is a possible equivalent to the plaintiff's structure, the position taken by Marston in defending his patent estops him from asserting that an article embodying his claims save for the individually sealed cells infringes. No file wrapper estoppel, depending upon actions taken in patent office proceedings, arises, for no claim incorporating unsealed units was presented and rejected. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); General Instrument Corp. v. Hughes Aircraft Co., *supra*; Borg-Warner Corp. v. Paragon Gear Works, *supra*; Carter Products, Inc. v. Colgate-Palmolive Co., *supra*. Nonetheless, as in Welch v. General Motors Corp., *supra*, something very close to file wrapper estoppel springs from the position Marston took in distinguishing prior art.

Remarks accompanying Marston's second submission of four claims to the patent office distinguished his claim from those of French patent No. 379,662 (DuPont) on the ground that the latter did not include a "link section arrangement," no "radial arrangement of rows of sealed portions." It is true that this statement apparently refers to claims 3 and 4, as allowed. However, as a gloss upon the claims' element of individually sealed link sections, which appears in all four claims, it can only sensibly be read to limit those claims in the same manner. As in *Welch*, "[w]hen prior art is distinguished in argument before the examiner on the ground of its lack of certain characteristics, although the applicant does not simultaneously narrow his claims, this Court concludes that the construction of claims thereafter accepted must be limited by the applicant's representations." Welch v. General Motors Corp., *supra* (slip opinion at 6). This is in accord with the public interest in preventing an outstanding patent from deterring further invention; in order to serve that interest, disclaimers of record once made cannot be withdrawn. Likewise the rule protects the integrity of patent office proceedings by barring the judicial extension of a patent beyond what the office might have been willing to grant. See Marvel Specialty Co. v. Bell Hosiery Mills, *supra*, 330 F.2d 177; Union Carbide & Carbon Corp. v. Graver Tank & Manufacturing Co., 196 F.2d 103, 109 (7th Cir.), cert. den., 343 U.S. 967, 72 S.Ct. 1059, 96 L.Ed. 1363 (1952); Ric-Wil Co. v. E. B. Kaiser Co., 187 F.2d 1, 3 (7th Cir. 1951).

Furthermore, arguments and representations made in court in efforts to sustain the validity of Marston's claims bar him from successfully asserting now that units embodying the changes distinguished in earlier litigation can be considered equivalent. In his reply brief in the original trial Marston distinguished the Kopec patent, No. 1,262,358, for a life preserver on the ground that it failed to disclose "any

pinched or sealed portions of the tubes at points spaced at intervals along the tubes, to form individually sealed sections * * *" (plaintiff's reply brief, at 7). The York patent No. 2,575,987, was also rejected as anticipatory in part for failure to incorporate individually sealed link sections. (Id., 10). The Court of Appeals, in sustaining this Court's finding of validity, relied upon Kopec's, DuPont's, and York's lack of sealed cells, Marston v. J. C. Penney Co., *supra*, 353 F.2d 981–982. Marston's success in defending his patent on these bases against Penney's attack establishes at least between these parties that articles without sealed cells are not within the claims.

In Wilcox Manufacturing Co. v. Eastern Gas & Fuel Associates, 400 F.2d 960 (4th Cir. 1968) the Fourth Circuit ruled that inconsistent positions could not be taken on the issues of validity and infringement and held invalid a patent "in the light of its representation to the Patent Office and the District Court," Id., 400 F.2d 964. That patentee had conceded that a certain element was vital to validity but contended that an article omitting that element nevertheless infringed. Accepting *arguendo* the latter representation, the Court of Appeals held the patent invalid.

Likewise, in Union Carbide & Carbon Corp. v. Graver Tank & Manufacturing Co., *supra*, the Seventh Circuit, in infringement proceedings, held a patentee to representations made in litigation in defense of his patent:

> In our opinion, the application of the doctrine of equivalency in this case is to ignore the teachings of the patent, the representation upon which the claims in suit were allowed and, more pointedly perhaps, the representations by which their validity has been sustained in the courts. While the difference between plaintiff's composition and those accused may not be great, it is that difference which distinguished plaintiff's composition from the prior art and which enabled it to sustain the validity of its grant. It

is now estopped from claiming otherwise. *Id.*, 196 F.2d 112.

In this case Marston's strategy in asserting the validity of his patent precludes him from contending now that it embraces Penney's current structure. The Court has examined all of the cases cited by counsel and has found none which enable the plaintiff to surmount the obstacle of his own representations. Because the accused articles do not infringe the patent, their sale does not violate the injunction.

Accordingly, an order shall enter denying the plaintiff's motion that the defendant be held in contempt.