PANTHER PUMPS & EQUIPMENT COMPANY, INC., now Morrison Pump Company, Inc., Plaintiff,

v.

HYDROCRAFT, INC., et al., Defendants.

No. 67 C 201.

United States District Court, N. D. Illinois, E. D.

Dec. 10, 1976.

Roy E. Petherbridge, Chicago, Ill., for plaintiff.

Timothy M. Bittel, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

AUSTIN, District Judge.

This cause is once again before me following a two-week contempt hearing which took place in April of this year. The Defendant, Mr. Louis Beck, appeared pursuant to this court's Order to Show Cause, dated February 9, 1976. That order directed Beck to show cause why he should not be held in contempt of court for violating an injunction issued in 1970 following a jury trial. The Plaintiff corporation brought this action for civil contempt because it believed that Beck's conduct in manufacturing a pump designed for spraying paint constituted a violation of this 1970 injunction entered by this court.

## BACKGROUND

Nine years ago, Plaintiff Panther Pumps filed suit against Hydrocraft, Inc., Paul W. Schlosser and Edwin Drath alleging that the Defendants were infringing upon patents held by Panther Pumps. The patents in question involved a paint spray apparatus; specifically, the alleged infringement occurred in the hydraulic pump used to operate the paint sprayer. Following a six-day jury trial in 1970, judgment was entered against the corporate Defendant as well as both individuals charged with infringement. Also, a permanent injunction which forbid Hydrocraft or any of its agents from infringing upon U.S. Patent Nos. 3,254,845 and 3,367,270 was entered. This decision was appealed by the Defendants and the Seventh Circuit affirmed the judgment against the corporation, but reversed as to the two individuals. *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 468 F.2d 225 (7th Cir. 1972). During the pendency of this appeal, no stay of execution of judgment was sought by the Plaintiff.

The claims disputed in the original trial, and intimately involved the recent contempt proceeding, concern mainly the pump used to power the paint spraying gun. As the Court of Appeals noted, paint spraying is an intermittent operation; when the operator stops spraying paint from the gun, the pump usually continues to operate on "standby". The patented device manufactured by the Plaintiff avoids overheating of the driving fluid during standby through the utilization of a process known as "cavitation cooling". Cavitation cooling is accomplished by creating a partial vacuum in the driving liquid chamber. When this occurs, some of the liquid in that chamber vaporizes, thereby reducing the temperature of the driving fluid below that which it would be if cavitation cooling did not occur.[1]

Following the issuance of the injunction in 1970, Louis Beck, who is presently being accused of contempt, purchased the outstanding stock of Hydrocraft, Inc. from his former partners, Paul W. Schlosser and Edwin Drath. Hydrocraft had by this time ceased functioning as a viable corporation. Its only real asset, a parts inventory, was transferred to Cleveland by Beck, allegedly to keep it from being seized by the Plaintiff.

In 1971, Beck formed an Ohio corporation known as Universal Spray Systems, Inc.

---

1. It should be noted that cavitation cooling is also referred to as "phase reversal cavitation". In this context, phase reversal is the process whereby a liquid changes into a gas or vice versa. This process unquestionably occurs in pumps which were manufactured by the Plaintiff.

and this company began to manufacture a paint spray pump called the "Spraymate B".[2] Superficially, the original Spraymate and the Spraymate B appear to be identical. However, the pump manufactured by Beck and Universal Spray Systems, Inc. does differ in at least one respect. The Spraymate B possesses a spring-loaded piston shaft which the Defendant Beck argues prevents the Spraymate B from exhibiting phase reversal cavitation or cavitation cooling. Naturally, the Plaintiff disagrees with the argument that phase reversal cavitation does not occur in the Spraymate B.

## DISCUSSION

Three major issues are before the court at this time. First, it must be determined whether or not Louis Beck and Universal Spray Systems, Inc. are violating the terms of the permanent injunction issued in 1970 by the manufacture of the Spraymate B Pump. Secondly, I must decide whether or not the transfer of Hydrocraft's assets was a contemptuous act on the part of the Defendant Beck. Finally, the Plaintiff urges this court to hold that Louis Beck is now personally bound by the original money judgment entered against Hydrocraft, Inc. in 1970.

## SALE OF SPRAYMATE B

The Plaintiff claims that the manufacture and sale of the Spraymate B Pump constitutes a violation of the permanent injunction for which Beck should be held in contempt of court. At the outset of this discussion, it should be noted that the Plaintiff has a heavy burden to bear when attempting to show conduct amounting to contempt. Where there is a "fair ground of doubt" as to the wrongfulness of the defendant's conduct, the remedy of contempt should not be applied. *California Paving Company v. Molitor*, 113 U.S. 609, 5 S.Ct. 618, 28 L.Ed. 1106 (1885). A high degree of certainty is required before the aggrieved party is entitled to a remedial order finding

the defendant in contempt. *Accumulator Co. v. Consolidated Electric Storage Co.*, 53 F. 793 (C.C.D.N.J.1892). Some courts state that the Plaintiff must prove that the Defendant acted contemptuously by clear and convincing evidence; a bare preponderance of the evidence will not suffice. *See e. g. Hart, Schaffner & Marx v. Alexander's Department Store, Inc.*, 341 F.2d 101 (2d Cir. 1965); *Washington v. Central of Georgia Railway Co.*, 174 F.Supp. 33 (M.D.Ga.1958), aff'd sub nom. *Marshall v. Central of Georgia Railway Co.*, 268 F.2d 445 (5th Cir. 1959), cert. den. 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960). Still other courts have said that the infringement complained of in the contempt proceeding must clearly and indisputably appear to be continuing in violation of the original injunction. *General Electric Co. v. McLaren*, 140 F. 876 (C.C.D. N.J.1905). *Cf. Smith v. Halkyard*, 19 F. 602 (C.C.R.I.1884). A degree of certainty which leaves no fair ground of doubt as to the violation of the court's order is required. Where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt. *Schauffler v. Local 1291, International Longshoremen's Association*, 292 F.2d 182 (3rd Cir. 1961); *Electro-Bleaching Gas Co. v. Paradon Engineering Co., Inc.*, 15 F.2d 854 (E.D.N.Y.1926).

As can be seen from the precedent cited above, the Plaintiff in this case must overcome a heavy burden if he is to successfully prove that the Defendant is guilty of contempt for manufacturing the Spraymate B.

The test utilized by most courts in determining whether the manufacture of a modified device constitutes contempt of court for continuing patent infringement is one of "equivalency" or "colorable imitation". In fact, the text of the 1970 injunction forbid the manufacture or sale of any "colorable imitation or equivalent" of the original Spraymate pump.

The basic question which the court must determine is whether or not the modi-

2. The original pump manufactured by Hydrocraft was referred to as the "Spraymate" pump.

fied device, in this case the Spraymate B pump, is the equivalent of the original device. *See e. g., Schlegel Manufacturing Company v. USM Corp.,* 525 F.2d 775 (6th Cir. 1975). In order for the new pump to be the equivalent of the earlier patented device, it must perform the same tasks, utilizing the same basic methods as were patented originally. *Marston v. J. C. Penney Co.,* 324 F.Supp. 889, 893 (E.D.Va.1971), *aff'd* 469 F.2d 694 (4th Cir. 1972). To frame this question in different terms, I must decide if the new device is only a colorable variation of the original model. *See generally Siebring v. Hansen,* 346 F.2d 474 (6th Cir. 1965). A device is only a colorable variation of an earlier device if it does the same work in substantially the same way to accomplish the same result. *McCullough Tool Co. v. Well Surveys, Inc.,* 395 F.2d 230 (10th Cir. 1968), *cert. denied,* 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968). If the new device or implement is more than colorably different from the earlier patented one, a finding of contempt is improper. *American Foundry & Manufacturing Co. v. Josam Manufacturing Co.,* 79 F.2d 116 (8th Cir. 1935). In the *American Foundry* case, that court defined the word "colorable" as meaning a lack of a fair ground for doubt. Citing the Supreme Court's opinion in *California Paving Company v. Molitor, supra,* the Eighth Circuit concluded that a device was more than "colorably different" from the original patented object if there was a fair ground of doubt as to the similarity of the two devices. Where such a fair ground of doubt exists, there can be no punishment for contempt. *See generally City of Campbell, Missouri v. Arkansas-Missouri Power Co.,* 65 F.2d 425 (8th Cir. 1933); *Crown Cork & Seal Co. v. American Cork Speciality Co.,* 211 F. 650 (2d Cir. 1914).

It is with this background in mind that the evidence presented at the two-week contempt hearing must be examined. The existence or non-existence of phase reversal cavitation is the crucial issue to be determined at this point in these proceedings. The record before me indicates that the Plaintiff, in the original trial and appeal, took the position that phase reversal cavitation occurred in the Spraymate pump. In fact, the Court of Appeals implied as much in its opinion when it stated that cavitation cooling was an element of the original patented invention. *Panther Pumps & Equipment Co. Inc. v. Hydrocraft, Inc., supra* at 230. Thus, phase reversal at the vapor pressure of the driving fluid was necessary in order to infringe upon the patents for the original Spraymate pump. The Plaintiff, having taken this position at trial, cannot now alter it at the contempt proceeding. *Union Carbide & Carbon v. Graver Tank & Manufacturing Co.,* 196 F.2d 103 (7th Cir. 1952).

At the two-week long contempt hearing, each side presented expert testimony relating to the presence or absence of phase reversal. Certain physical tests were performed by each group of experts and the results of these tests were utilized to support the conclusions reached. After hearing the evidence presented, and carefully considering the entire record before me, I must conclude that the Plaintiff has not successfully carried his burden. The evidence presented does not convince me that phase reversal or cavitation takes place during the operation of the Spraymate B pump while on standby. The claims of the patents on the original Spraymate pump require phase reversal cavitation and this process cannot take place unless the vacuum in the chamber is at the vapor pressure of the ethylene glycol fluid. The expert witnesses of the Defendant Beck testified that cavitation did not occur in the operation of the Spraymate B pump and I find that testimony persuasive. The testimony I have heard leads me to conclude that the Spraymate and the Spraymate B do not perform their functions in substantially the same fashion. The Spraymate B pump possesses a modified piston shaft with a spring device which limits the amount of force applied to pull the piston backward while in operation. By limiting the amount of force applied to the piston, through the utilization of the spring-loaded piston shaft, the inventor of the Spraymate B pump has prevented the occurrence of phase reversal

or cavitation. Consequently, there can be no holding of contempt for the manufacture and sale of the Spraymate B.

[6] As indicated above, the Plaintiff carried a heavy burden in a proceeding of this nature. That burden has simply not been met by the evidence presented during the two-week hearing held in April. The Defendant Beck, on the other hand, has gone further than necessary in rebutting the Plaintiff's contentions; he has convinced the court that the original Spraymate and the Spraymate B operate in a significantly different way due to the presence of the modified piston assembly. Where an alteration is merely colorable and obviously made simply for the purpose of evading an earlier ruling of the court, contempt remedies are desirable. However, when the alleged infringement is not clear on the fact of the matter, the accused party will not be held in contempt of court. R.C.A. v. Cable Radio Tube Corp., 66 F.2d 778, 783 (2d Cir. 1933). The alleged infringement in this litigation is anything but clear; in fact, I do not believe that any infringement occurred when the Spraymate B was manufactured and sold by Defendant Beck. For these reasons, the Plaintiff's attempt to hold the Defendant in contempt of this court for violating the terms of the 1970 injunction must fail.

## ASSET TRANSFERS

The Plaintiff further asks that Louis Beck be held in contempt of court for the transfer of assets from Hydrocraft, Inc. to an Ohio corporation called Universal Spray Systems, Inc. During late 1970 and early 1971, the parts inventory of Hydrocraft was physically transferred to Cleveland, at the direction of Louis Beck, where they were ultimately utilized by Universal Spray Systems, Inc.[3]

■ At no time did this court enter an order prohibiting Hydrocraft from transferring any assets; no order was ever entered

prohibiting Beck from either causing the transfer or receiving these assets. Since Beck was never specifically barred from performing these allegedly contemptuous acts, the Plaintiff is apparently urging that I hold Beck in contempt for the violation of an implied order of some type. This I will not do because the remedy of civil contempt is a severe one which should be utilized only when a specific directive or order has been issued. See e. g. In re LaMarre, 494 F.2d 753, 758 (6th Cir. 1974); Berry v. Midtown Service Corp., 104 F.2d 107, 111 (2d Cir. 1939). Cf. McFarland v. U. S., 295 F. 648 (7th Cir. 1923). No specific command was ever issued to the parties or Beck during the course of this litigation which would have prevented the transfer which took place. Therefore, Beck cannot be found in contempt for these acts.

■ Additionally, the Plaintiff argues that the transfer of Hydrocraft assets constitutes contributory patent infringement. This position is without merit because it is clear that there can be no contributory patent infringement without a direct infringement. See e. g. Aro Manufacturing Co., Inc. v. Convertible Top Co., Inc., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). The Plaintiff in this contempt proceeding has not produced enough evidence to convince the court that Beck should be held in contempt for violation of the 1970 injunction for manufacturing and selling the Spraymate B pump. Therefore, I will not make any finding of direct patent infringement in these contempt proceedings.

## SUBSTITUTION OF DEFENDANTS

■ The Plaintiff has moved, pursuant to Rule 25(c) of the Federal Rules of Civil Procedure, for an order substituting Louis Beck and Universal Spray Systems, Inc. as defendants in the original litigation, which resulted in a $150,000 judgment against Hydrocraft, Inc.

Rule 25(c) is worded as follows:

3. It should be noted that these transfers took place after the issuance of the permanent injunction barring the production of the original

Spraymate pump. Hydrocraft, Inc. was, for all practical purposes, defunct at this time.

(c) *Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action . . . .

Generally, Rule 25(c) applies only to actions which are pending. This case is no longer "pending", since it went to final judgment six years ago. However, the Plaintiff urges that in certain situations, substitution of parties after entry of judgment is proper. *See generally,* 3B *J. Moore, Federal Practice* ¶ 25.03[1], at 25–101 (2d ed. 1975). The Plaintiff further contends that Beck and Universal Spray Systems became successors in interest of Hydrocraft at the time the parts inventory was transferred from Chicago to Cleveland. It is argued that Beck should be held liable for the $150,000 judgment entered against Hydrocraft because he engineered a fraudulent transfer of the assets of the original defendant so as to make Hydrocraft judgment-proof.

The very nature of Rule 25(c) vests a great deal of discretion in the hands of the court. It is not mandatory that a substitution be made in every case of a transfer of interest. *McComb v. Row River Lumber Co.,* 177 F.2d 129 (9th Cir. 1949). I personally have grave doubts about transferring liability to an individual and a corporation who were not parties to the original lawsuit. In my opinion, due process and principles of basic fairness require that an individual be given his day in court. Beck and Universal Spray Systems have never had the opportunity to present evidence against the imposition of liability with regard to the original infringement charge and, of course, the issue of liability is now immune from collateral attack. The Plaintiffs argue that Beck cannot complain of a denial of due process because he had ample opportunity to present evidence relating to the transfer of assets in 1970, during the contempt hearing held in April. By arguing in this fashion, the Plaintiff fails to understand the very nature of the due process right possessed by Beck and Universal Spray Systems. Beck and Universal *must* be given the opportunity to defend against the original infringement charge before liability is imposed upon them. They never had this opportunity, and the chance to present evidence relating to issues other than the original infringement in a later contempt hearing is not an adequate substitute. I do not believe that Rule 25(c) can be utilized in the manner sought by the Plaintiff. The Federal Rules of Civil Procedure were not designed to avoid the constitutional requirement of due process of law.[4] Once a case has proceeded to judgment, any opportunity a person such as Beck would have had to defend the infringement charge is lost permanently. It seems grossly unfair to impose a significant financial liability upon an individual under these circumstances and for these reasons, I will not do so.

Additionally, the Plaintiff claims that Beck should be held personally liable for the outstanding judgment because he is the alter ego of Defendant Hydrocraft. In essence, the Plaintiff is asking this court to "pierce the corporate veil" and impose liability upon Beck because he and Hydrocraft were, in reality, one single entity. In order to apply the alter ego doctrine, a finding of control and domination of the corporation on the part of the individual is necessary. *See e. g. U. S. v. Sancolmar Industries, Inc.,* 347 F.Supp. 404 (E.D.N.Y. 1972). I cannot make such a finding based upon the record. The evidence presented during the contempt hearing does not show

---

4. Most of the precedent cited by the Plaintiff to support its contentions is plainly distinguishable from the case at bar because of the lack of a final judgment in those cases. *See e. g. Hirsch v. Bruchausen,* 284 F.2d 783 (2d Cir. 1960). The one case referred to by the Plaintiff which had not yet gone to final judgment, *Becker Steel Co. of America v. Hicks,* 66 F.2d 497 (2d Cir. 1933), plainly involved a very different factual pattern than is present in the case before me now. One other case cited by the Plaintiff in support, *United States v. Jones Coal Company,* 325 F.2d 877 (6th Cir. 1966), does not even remotely deal with any issue before this court.

complete domination of the corporate entity by Beck. In the situation existing between Beck and Hydrocraft, there was no unity of interest between the individual and the corporation. The separate existence of the corporation was always maintained and Beck never exercised anything even resembling domination over Hydrocraft. He was simply an investor who left the day-to-day operations of the corporation in the hands of his two partners. Plainly, the facts present in this case do not allow me to pierce the corporate veil and impose personal liability upon Beck. *See generally, National Bond Finance Co. v. General Motors Corp.*, 238 F.Supp. 248 (W.D.Mo.1964), aff'd., 341 F.2d 1022 (8th Cir. 1965).

## CONCLUSION

Overall, the Plaintiff simply failed to bear its burden in this contempt proceeding. As was indicated above, that burden was a particularly heavy one and it perhaps might have been wiser for the Plaintiff to choose another course of action to attempt to put a stop to actions which it considered improper. But the Plaintiff selected the contempt proceeding as its means of attack, and it must live with the consequences of that choice.

Recently, the Plaintiff moved for permission to re-open the contempt hearing for the taking of additional testimony. Specifically, the Plaintiff wishes to obtain testimony from another expert regarding the vacuum pressure within the driving chamber of the Spraymate pump. An affidavit supplied by the potential witness indicated what the nature of his testimony would be. Even if this witness proved to be most persuasive, he could still not overcome the evidence already heard from the Defendant. This additional testimony would not dispel the fair ground of doubt which I have as to the contemptuous nature of the Defendant's conduct in manufacturing the Spraymate B. Therefore, it is pointless to hear this additional testimony. The Plaintiff's motion to re-open the hearing must be denied.

The order to show cause is hereby discharged and the Plaintiff's motion to substitute Louis Beck and Universal Spray Systems, Inc. as party defendants is denied.

It is so ordered.