Robert A. COLLINS and Pigloo Corporation, an Iowa Corporation,
Appellants,

v.

Foster OWEN, Appellee.

No. 16993.

United States Court of Appeals
Eighth Circuit.

Dec. 19, 1962.

Rehearing Denied Jan. 18, 1963.

Allen S. Stim, New York City, (Menahem Stim and Paul J. Curran, New York City, on the brief), for appellant.

John S. Martin, Jr., Asst. U. S. Atty., New York City, (Vincent L. Broderick, U. S. Atty., and Andrew T. McEvoy, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, MOORE, and KAUFMAN, Circuit Judges.

Fred A. Ontjes, Mason City, Iowa, for appellants.

Charles L. Lovercheck, Erie, Pa., for appellee.

Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

SANBORN, Circuit Judge.

This is an action brought by the appellants against the appellee for infringement of United States Letters Patent No. 2,740,379 for a farrowing pen. The patent was applied for by Robert A. Collins on August 20, 1954, and was issued to him on April 3, 1956. The Pigloo Corporation is his assignee. The questions raised by the pleadings were those usual in such cases, including the validity of the patent. The case was tried to Judge Graven, of the Northern District of Iowa, without a jury. He determined that the patent was invalid for lack of invention because of two New Zealand publications in which the invention was "described * * * more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).[1] Judgment was entered dismissing the plaintiffs' complaint and denying the defendant any attorney fees. The plaintiffs have appealed, asserting that the judgment is clearly wrong. The defendant has cross-appealed, claiming that the court erred in failing to award him attorney fees. The cross-appeal is No. 16,998.

Judge Graven, in his Findings of Fact, Conclusions of Law, and Order for Judgment, which cover more than 40 pages of the record on appeal, and are reported in 199 F.Supp. 61–78, has stated in great detail the circumstances which gave rise to this action, the facts relating to the issues presented, what he conceived to be the applicable law, and the basis for his determination that the patent in suit was invalid for lack of invention over the prior art because of the two New Zealand publications.

We do not propose to repeat, rephrase or enlarge upon what has been said by the trial judge in his exhaustive findings and conclusions. They contain a complete description of the Collins farrowing pen, which is called a "pigloo"; a statement in full of the claims of the patent; a sufficient biography of Collins; and the complete text of the publications claimed by the defendant to have described the patent in suit with adequate particularity more than a year before Collins applied for his patent.

The plaintiffs assert that the court erred in admitting the publications in evidence, and also erred in failing to exclude other items of evidence objected to as incompetent. The plaintiffs seem to have overlooked the fact that this was a nonjury case in which the trial court was free, within broad limits, to permit the parties to introduce any evidence which they regarded as relevant. We repeat what was said in Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377, at page 379:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the

---

1. "§ 102. A person shall be entitled to a patent unless—

    *     *     *     *     *

"(b) the invention was patented or described in a printed publication in this or a foreign country * * * more than one year prior to the date of the application for patent in the United States * * *."

admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. * * * "

We shall confine ourselves to the question whether the court erred in finding that the two New Zealand publications adequately "described" the invention of Collins. The first description was published in The New Zealand Farmer of January 1, 1953, and disclosed a circular or cylindrical farrowing pen or house with substantially the same features and designed for the same purpose and to accomplish the same object as the Collins pen. The second publication was in the New Zealand Dairy Exporter of February 2, 1953, which described the same farrowing pen previously described in The New Zealand Farmer. It was referred to as "The Ruakura 'Round House'" developed at the Ruakura Animal research Station in New Zealand. There can be no doubt that each of the New Zealand publications was a "publication" within the meaning of 35 U.S.C. § 102(b). The debatable question the trial court was called upon to decide was whether what Collins claimed to have invented had been described in these publications with sufficient particularity to constitute anticipation under § 102(b).

The trial judge found (pages 64–65 of 199 F.Supp.):

"Prior to January 1, 1953, the Ruakura Animal Research Station in New Zealand had been engaged in research as to farrowing pens. Mr. D. M. Smith, research officer in pig husbandry of that station, had to do with that research. The January 1, 1953, issue of the New Zealand Farmer carried an article about a circular individual farrowing pen that had been developed as a result of the research. The February 2, 1953, issue of the New Zealand Dairy Exporter carried a similar account.

Both the New Zealand Farmer and the New Zealand Dairy Exporter were bona fide papers printed and published in New Zealand. The issues of those papers introduced into evidence are authentic issues of those papers. In January, 1954, Mr. D. M. Smith, the research officer referred to, was at the College of Agriculture at the University of Minnesota. Robert A. Collins came to that college in January, 1954, to consult with a Dr. Winter. Dr. Winter introduced him to Mr. D. M. Smith. Mr. Collins discussed with Mr. Smith the matter of round hog houses. Mr. Smith told Mr. Collins that he was working on a round hog house but that it was not functioning at the time."

The trial judge also found (pages 77–78 of 199 F.Supp.):

" * * * The [two New Zealand] publications disclose and show a circular farrowing pen designed for the use of one farrowing sow which is approximately 8 feet in diameter and from 3 feet to 3 feet 6 inches in height with an entrance into it. They disclose that pen has a hinged flat roof and an inwardly sloping floor. They disclose an inner circular hover which is set off center to the main circle of the structure and adapted to constitute a safety zone for a litter of pigs. They disclose that the hover has a solid wall except for a grilled opening into it on the side away from the entrance into the structure. They disclose that the interior arrangements of the pen are such as to make it impossible for a sow to lie down comfortably except with her back to the wall opposite the grilled opening into the hover. They disclose a heating lamp suspended over the middle of the hover. They disclose a hover in which the pigs can sleep and nurse at optimum temperature safe from drafts and safe from being lain on by the sow. They disclose a guard rail around the inner

side of the outer wall of the structure. The comparison heretofore set forth between the claims of patent and the matters described or shown in the publications show that all of the features set forth in the claims are described or shown in the publications, except the feature of the hover floor being elevated above the main floor of the structure, which feature does not appear to be of significance.

"The Court finds that the defendant has clearly and satisfactorily established that a person skilled in the art of constructing hog houses with Exhibits 'A' and 'B' [the two New Zealand publications] before him could construct the invention claimed in the patent in suit without assistance from that patent."

■ If there is an adequate evidentiary basis for these findings and if they were not induced by an erroneous view of the applicable law, the judgment must be affirmed. Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 137–138. This Court is a court of review, and not a court for the retrial of cases. We find no basis in the record for a ruling that the findings quoted are incorrect or unjustified.

■ We are in accord with the trial court's determination that the two New Zealand publications disclose everything covered by the patent in suit that reasonably can be regarded as constituting the invention of Collins or as representing any possible advance over the prior art pertaining to farrowing pens for sows. We also agree that the description of the circular farrowing pen in the two foreign publications is sufficient to enable one skilled in the art of constructing hog pens or similar structures to produce a farrowing pen substantially identical with that covered by the Collins patent without having to resort to its disclosures. The amazing thing about this case is how Smith in New Zealand and Collins in Iowa could, in almost the same year, come up with virtually identical means for solving the problem of providing a satisfactory farrowing pen for a sow and her pigs. The defendant believes that Collins obtained his ideas from Smith as a result of their meeting at the University of Minnesota in January of 1954. The trial judge declined to draw that inference (page 65 of 199 F.Supp.), and found that Collins conceived the invention in 1953.

■ The test for determining the adequacy of the description of an invention in a foreign publication is, as the trial court recognized, that "the knowledge 'derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use,' * * *." Wisconsin Alumni Research Foundation v. George A. Breon & Co., Inc., 8 Cir., 85 F.2d 166, 167. Cf. Baldwin-Southwark Corporation v. Coe, 76 U.S.App.D.C. 412, 133 F.2d 359, 365, and Trico Products Corporation v. Delman Corporation, 8 Cir., 180 F.2d 529, 532–533; 1 Walker on Patents (Deller's Edition) § 51, pages 270–271; 40 Am.Jur., Patents, § 37, page 554.

" * * * A prior patent or publication needs not to have been reduced to practice, or to be more than a paper proposition, in order to negative the novelty of a later patent, even though the devices of the prior patents be incapable of successful operation. It is sufficient if the prior patents embody the elements and disclose the principle of operation of the patent in suit. * * *" 1 Walker on Patents (Sixth Edition [Lotsch]) § 96, pages 120–121; 1 Walker on Patents (Deller's Edition) § 51, pages 270–279.

■■ We think the trial judge did not abuse his discretion in denying the defendant attorney fees. Section 285 of 35 U.S.C. provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Judge Graven found that the plaintiffs in bringing this action were acting in good faith. In denying the defendant's motion for an award of attorney fees, the Judge ruled that this was not an "exceptional"

case in which such an award should be made. The allowance of attorney fees in patent cases is the exception and not the rule and is confided to the discretion of the District Court. See: Turchan v. Cincinnati Milling Machine Co., 6 Cir., 208 F.2d 228; Hyster Company v. Hunt Foods, Inc., 7 Cir., 263 F.2d 130, 134; Kemart Corporation v. Printing Arts Research Laboratories, Inc., 9 Cir., 269 F. 2d 375, 394. While we think that the court might well have awarded an attorney fee to the defendant, we cannot say that the denial of such an award was an abuse of judicial discretion.

The judgment appealed from is in all things affirmed.