Claude SIEBRING d/b/a Siebring Manufacturing Company, and Owen Siebring, Appellants,

v.

Charles W. HANSEN and AFSCO, Inc., Appellees.

No. 17814.

United States Court of Appeals Eighth Circuit.

June 2, 1965.

Rehearing Denied June 28, 1965.

Donald H. Zarley, of Dick, Zarley, Mc-Kee & Thomte, Des Moines, Iowa, made argument for appellant and filed brief with Bruce W. McKee and Dennis L. Thomte, Des Moines, Iowa, Robert R. Eidsmoe, of Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, Iowa, and Lucas J. DeKoster, Hull, Iowa.

Phillip H. Smith, of Merchant, Merchant & Gould, Minneapolis, Minn., made argument for appellees and filed brief with John D. Gould, Minneapolis, Minn.

Before MATTHES and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

MATTHES, Circuit Judge.

This is a civil contempt proceeding in which the trial court, Honorable William C. Hanson, found Claude Siebring and Owen Siebring in contempt on the ground that they had continued to infringe a patent subsequent to and in violation of a previous court decree.[1] The basic question presented here is whether the court committed error in holding the Seibrings in contempt. The issue of infringement was also injected in the trial and it too was determined adversely to the Siebrings. The judgment of the court in this regard is also challenged by appellant.

---

[1]. Formal suggestion has been made and filed that Claude Siebring, father of Owen Siebring, died subsequent to the rendition of the judgment appealed from. Although this proceeding was initiated solely against Claude Siebring, Owen was permitted to intervene and the judgment is against both. Owen remains as the sole appellant. Hereinafter the alleged offending parties will be referred to as Seibring or Seibring Manufacturing Company.

The court's memorandum opinion which constitutes its findings of fact, conclusions of law, and order for the judgment, is reported at 231 F.Supp. 634. As an examination thereof will disclose, the court exhaustively reviewed the pertinent facts, stated the contentions of the parties, analyzed the issues, and declared and applied what it regarded to be the applicable and controlling legal principles. The thoroughness of the court's factual analysis obviates the necessity of another full recital of the pertinent evidence.

The background facts and the prior court proceedings are important. Charles W. Hansen, one of the moving parties below and an appellee here, procured patent 2,867,314 relating to an improved bunk feeder on January 6, 1959.[2] Claude Siebring, doing business as Siebring Manufacturing Company, manufactured and sold bunk feeders prior to the issuance of the Hansen patent. A patent infringement suit was filed by Hansen against Claude Siebring, d/b/a Siebring Manufacturing Company, in the United States District Court for the Northern District of Iowa, and on October 19, 1959, a consent decree was entered in that action. The decree embodied the essential elements of the written agreement the parties had entered into for the purpose of amicably settling their differences. Inasmuch as the trial court's opinion recites in full the court decree, Id. at 637, 638, a summary thereof should suffice for the purposes of this opinion. It decreed that patent 2,867,314 owned by Hansen "is good and valid in law"; that defendant (Claude Siebring) has infringed upon patent 2,867,314 by manufacturing and/or selling subsequent to issue date of the patent bunk feeders coming within the scope of the claims of the Hansen patent; that defendant "his heirs, employees, associates, servants, privies" etc., shall be permanently enjoined and forever restrained from manufacturing and/or selling devices which constitute an infringement of Hansen's patent; and that the injunction shall not restrain "defendant or those in consort with him" from manufacturing and/or selling devices which do not come within the scope of the claims of the Hansen patent. Pursuant to the consent decree, a writ of injunction was duly issued.

The present proceeding was instituted on February 1, 1962, by the filing of a motion for contempt in which it was alleged that defendant has "wrongfully and contumaciously continued to manufacture and sell devices which constitute an infringement of plaintiff's said Patent 2,867,314 since the issue of and in violation of the beforesaid Writ of Permanent Injunction." A show cause order was issued. Thereafter, Owen Siebring, who was a partner with his father in the business, was permitted to intervene, resistances to the motion for contempt were filed and thereby the issues were made up and framed.

The trial court correctly stated, Id. at 640, that the question as to contempt was whether "the defendants' machines sold after the Consent Decree and Injunction contained merely colorable changes from the Exhibit 8 type machine which was the subject of the Consent Decree and Injunction." Although entertaining the view that the question whether the post-decree machines manufactured and sold by defendants also infringed upon appellees' protected machine was not an issue in the case, the court, at the insistence of the Siebrings and because of the plenary hearing, in which the scope of the evidence was all-encompassing, also considered and resolved the infringement question.

We are satisfied that the crucial and decisive trial issue was not burdened with undue and unusual complications. The rather simple question was whether the bunk feeders manufactured and sold by the Siebrings subsequent to the decree were mere colorable imitations of

---

2. Charles W. Hansen assigned his rights in the patent April 3, 1962, to AFSCO, Inc., a corporation, and during the trial the corporation was added as a party plaintiff.

the feeders which were encompassed within the consent decree. However, astute and ingenious counsel for appellant persisted in seeking to attack the validity of the Hansen patent and to convert the hearing into a full-scale patent infringement contest.

The legal principles which are ordinarily applicable and serve as guidelines in contempt proceedings are well settled.

■ Courts are empowered by the provisions of Title 35 U.S.C.A. § 283, to grant injunctions to prevent the violation of any right secured by patent. And one who violates an injunction restraining him from infringing upon a patent may be held in contempt. 18 U.S.C.A. § 401; Hopp Press, Inc. v. Joseph Freeman & Co., Inc., 323 F.2d 636 (2 Cir. 1963); Wire Rope Appliance Co. v. Eureka Tool Co., 256 F. 677 (D.Ct. Kans.), affirmed 265 F. 673 (8 Cir. 1920); American Foundry & Mfg. Co. v. Josam Mfg. Co., 79 F.2d 116 (8 Cir. 1935). In a contempt proceeding for alleged violation of an injunction entered pursuant to a consent decree in the original action, the validity of patent claims is not in issue. T. L. Smith Co. v. Cement Tile Machinery Co., 257 F. 423 (8 Cir. 1919), cert. denied 250 U.S. 669, 40 S.Ct. 14, 63 L.Ed. 1198 (1919); D. E. Stearns Company v. Brashear, 145 F. Supp. 735 (W.D.Mo.1956); Kiwi Coders Corporation v. Acro Tool & Die Works, 250 F.2d 562 (7 Cir. 1957); Wire Rope Appliance Co. v. Eureka Tool Co., supra; Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 71 F.2d 850 (6 Cir. 1934), cert. denied Wadsworth Electric Mfg. Co. v. Sachs, 294 U.S. 724, 55 S.Ct. 552, 79 L.Ed. 1255 (1935); Hopp Press, Inc. v. Joseph Freeman & Co., Inc., supra, where the court succinctly stated, 323 F.2d at 637: "The validity of the patent is not before the court, for the consent decree made that question *res judicata* for the purposes of this appeal." (Citing cases). A consent decree is a judicial act, United States v. Swift & Co., 286 U.S. 106, 114, 115, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and possesses the same force and character

as a judgment rendered following a contested trial. Kiwi Coders Corporation v. Acro Tool & Die Works, supra.

■ A contempt proceeding for violation of a patent infringement injunction will lie where the new and alleged offending device is merely "colorably" different from the enjoined device or from the patent. In American Foundry & Mfg. Co. v. Josam Mfg. Co., supra, this Court held, 79 F.2d at 117:

"As will be hereinafter shown, all subsequent constructions by a convicted infringer are not triable in contempt proceedings. Only where such constructions are merely 'colorably' different from the enjoined device or from the patent is the issue so triable. Such constructions may turn out to be infringements, but if they are more than 'colorably' different, the issue of infringement must be otherwise determined than by a contempt proceeding. Therefore, when the issue of infringement is presented in a contempt proceeding, the court must first determine whether it can properly entertain the issue in that proceeding."

See also 3 Walker on Patents, Sec. 818 (Deller's Edition 1937), and compare Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., supra; Baltz v. Walgreen, 198 F.Supp. 22 (W.D.Tenn. 1961).

■ Thus, in light of the settled state of the law which delineates the issues that may permissibly be adjudicated in a contempt proceeding, we find no merit in appellant's contention that the court erred in failing to adjudicate the validity of the Hansen patent. That question has been conclusively settled and determined by the consent decree and is res judicata for purposes of this appeal. The argument that Owen Siebring (appellant) is not bound by the consent decree because he was not a party to the agreement and was not restrained by the court's injunction is lacking in substance. The facts are that Owen was a partner with his father in the Siebring business—he was

active in its management, he was fully aware of the terms of the agreement forming the foundation for the consent decree, indeed he signed the agreement as a witness to his father's signature, and at all times understood the import of the decree. But it is not necessary to rest our conclusion on that basis. The trial court permitted Owen to intervene in this proceeding, stating:

"In addition to other submissions in this cause, one Owen Siebring has made a Motion to Intervene. This motion should be granted under Rule 24 because he may be liable if it is determined that Claude Siebring, the partner of Owen Siebring, has been infringing on the patent of the plaintiff. A partnership is liable in an action for infringement committed in the regular course of the partnership business by one or more of the partners. A manager of the partnership is a joint infringer. Featherstone v. [Ormonde] Cycle [Co.], 53 Fed. 110; Trent v. Risdon Iron and Locomotive Works [9 Cir.], 102 Fed. 635; Dean Rubber [Mfg. Co.] v. Killian, 106 F.2d, 316 (8th Cir. 1939); Walker on Patents, Section 436, Vol. III."

█ We subscribe to the trial court's conclusion and observe further that as a consequence of the intervention Owen was required to recognize and accept the existence of the consent decree. Under the circumstances here presented he is bound by all orders and decrees in the original action. See and compare Commercial Electrical Supply Co. v. Curtis, 288 F. 657, 659 (8 Cir. 1923), cert. denied 263 U.S. 709, 44 S.Ct. 36, 68 L.Ed. 518 (1923); Rector v. United States, 20 F.2d 845 (8 Cir. 1927); Galbreath v. Metropolitan Trust Co., 134 F.2d 569, 570 (10 Cir. 1943), and cases cited therein; Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141, 153 (S.D. Calif.1954); 4 Moore, Federal Practice, § 24.16, at 120, 121 (2d Ed. 1953).

Appellant also argues that "[t]here can be no doubt that the Court has au-thority to modify the terms of an injunctive decree," and cites as authority such cases as United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); System Federation No. 91, Railway Employees' Dept., AFL–CIO, v. Wright, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); Pope Manufacturing Company v. Gormully, 144 U.S. 224, 12 S.Ct. 632, 36 L.Ed. 414 (1892). We have examined these cases and are not persuaded that the rule for which they stand has any application to the facts of this case.

*Contempt Issue.* We turn now to the consideration of the contempt issue. Siebring sought to escape the force of the consent decree and the resulting writ of injunction on the theory that the decree applied only to Siebring's "previously made dropped-holed tubes and not the horizontal-holed tubes." The dropped-holed tubes are portrayed in Exhibit 7, hereinafter referred to as PX 7. This feeder concededly infringed the Hansen patent. The horizontal-holed tubes are shown in Exhibit 8, and will hereinafter be referred to as PX 8. This machine or feeder was also manufactured by Siebring prior to the consent decree but, as suggested, Siebring contends the decree was not intended to and does not in effect apply to this feeder.

The trial court's opinion, 231 F.Supp. at pp. 638, 639, accurately describes the structure of the Hansen bunk feeder, its features and the functional aspects thereof. By way of resume, this feeder is made up of a feed hopper and an elongated discharge or delivery tube which is mounted on a frame. The tube is in sections with one end connected to the hopper. An auger is disposed within the tube and the turning of the auger causes feed from the hopper to be discharged through longitudinally spaced openings into the feed bunk trough. By means of a tube rotation control lever the entire delivery tube may be adjusted about its axis and the discharge openings in the tube may thereby be lowered as one progresses from the hopper end to the outer end of the tube. The pri-

mary function of the feeder is to provide even distribution of feed material in the feed bunk trough.

The trial court found that the only substantial difference between the PX 8 feeder and the Hansen machine was in the arrangement of the discharge holes in the delivery tube sections. In the PX 8 feeder the discharge openings were arranged generally horizontal or parallel to the axis of the tube in each tube section, but the sections of the tubes were manufactured so as to permit them to be assembled—not necessarily with the discharge holes arranged in a straight line, but so that the lowest walls of the discharge openings could be disposed progressively lower from a high point adjacent to the hopper to a low point at the outer end of the tube. Id. at 639.

The record convinces us that the court correctly interpreted the meaning and effect of the consent decree and properly determined that the decree applied to and enjoined the manufacture or sale of the PX 8 type of feeder.

Subsequent to the decree Siebring manufactured or sold four types of bunk feeders. In each of the four different types of feeder the variation from the PX 8 feeder was in the auger designated by Siebring as a "wonder auger." Since they are accurately described in the court's opinion, Id. at 639, 640, another description thereof is wholly unnecessary. It is sufficient to observe that the evidence clearly demonstrated and the court found that the striking similarity of the post-decree Siebring feeders and the PX 8 model was in the structure of the elongated tubes through which feed material passed and was discharged into the feed trough. The indisputable fact is that the wonder auger feeders were so constructed that the purchasers thereof were, as was true with the PX 8 feeder, enabled, in the assembling of the machines, to place the tubes in such a position that the discharge holes were progressively lowered. The record shows that, with one exception, the feeders were assembled to bring about a progressive lowering of the discharge

openings. It was this feature of the wonder auger machines which permitted an even distribution of the feed material, and it was this feature which obviously caused the court to conclude that the alleged offending feeders were not materially different from the enjoined PX 8 feeder.

It is abundantly clear that Judge Hanson carefully and meticulously considered and examined the evidence bearing upon the difference in the structural make-up of the wonder auger types of feeder and the PX 8 feeder. After doing so, he found that the wonder auger machines, with or without the elongated openings, were designed to perform the same purpose as the PX 8 machine and the Hansen feeder; that the function of the wonder auger was not substantially different from the standard auger; and that the principle upon which the wonder auger functioned was substantially or almost identical to the principle upon which the PX 8 machine functioned. From all of this the court concluded that three types of feeders manufactured and/or sold by Siebring subsequent to the decree and which are described in detail on p. 638 of the court's opinion, constituted mere colorful imitations of the PX 8 type machine and, as a consequence, found that appellant violated the injunction decree.

Having examined the record, the numerous exhibits, including photographs and charts, with care, we have no difficulty in concluding that there is substantial evidence to support the trial court's findings in regard to the contempt issue and that such findings are in accord with established and applicable legal principles.

*Infringement Issue.* The trial court stated that this issue "was not actually taken up in the contempt proceedings"; nevertheless, the court found "only because the defendants are content that infringement was actually at issue, that the three machines not only were mere colorable imitations of their previously enjoined Exhibit 8 type machine, but

that these three machines did infringe the Hansen patent."

■ Having determined that the trial court properly ruled that the offending Siebring feeders were only colorably different from the enjoined feeders and the Hansen patent, it follows that the three offending feeders hereinabove referred to infringed the Hansen patent. The court was not, on this record, required to adjudicate the infringement issue in this contempt proceeding; however, as we have seen, it was prevailed upon by the Siebrings to do so. The infringement issue was fully explored by the trial court and the conclusion it reached was not only justified but, in our view, is the only result warranted by the facts and the applicable law.

*Costs, Disbursements and Attorney Fees Issue.* In the formal judgment entered pursuant to its opinion, the court adjudged that "plaintiffs are entitled to their costs and disbursements and reasonable attorneys' fees in this action."

■ Appellant assigns as error this action of the court. We are told by appellant that in patent infringement cases attorney fees should be awarded only in extraordinary cases bottomed on a finding of unfairness or bad faith. And, of course, appellant insists that this is not such a case. To be sure, the law is clear that in an action for patent infringement attorney fees should not be allowed except in the extraordinary case. The statute so provides, 35 U.S.C.A. § 285, as do the cases cited and relied upon by appellant. Collins v. Owen, 310 F.2d 884 (8 Cir. 1962); Rohr Aircraft Corporation v. Rubber Teck, Inc., 266 F.2d 613 (9 Cir. 1959); Park-In-Theatres v. Perkins, 190 F.2d 137 (9 Cir. 1951), which contains an interesting discussion of the law and the circumstances under which such allowances may properly be granted.

From the argument made by appellant and the authorities relied upon by him, it is apparent that he views this as an ordinary patent infringement action. This position is untenable. As we have tried to demonstrate, this is a civil contempt proceeding growing out of the continued infringement of the Hansen patent in the face of an injunction proscribing such infringement. Unlike numerous infringement cases where the validity of the patent was the crucial question, the validity of the Hansen patent had been judicially determined and is not an issue. The circumstances attending the conduct of appellant and Claude Siebring subsequent to the rendition of the consent decree certainly justify the conclusion that this is an extraordinary case.

There is sound authority to support the allowance of attorney fees, disbursements and costs in contempt actions growing out of an order enjoining infringement of a patent. 3 Walker on Patents, Secs. 835–837 (Deller's Edition 1937); Sunbeam Corporation v. Golden Rule Appliance Co. (trademark case, 252 F.2d 467 (2 Cir. 1958); Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co., 71 F.2d 850 (6 Cir. 1934); Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md. 1963); Baltz v. Walgreen Company, 198 F.Supp. 22, 26 (W.D.Tenn. 1961). Compare also Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932).[3]

■ Obviously, whether the complaining party is entitled to allowances of the nature of those here under attack depends upon the facts and circumstances of each case. Such allowances are confided to the sound discretion of the trial court, and the appellate court's review is confined to determining whether the court's action resulted from an abuse of judicial discretion. See Collins v.

---

3. In Sunbeam Corporation, a civil contempt proceeding, the court held, one Judge dissenting, that it was improper to assess a fine against the defendant although such fine was apparently intended to approximate the probable damages.

In Baltz the District Court held in unequivocal language that a fine was appropriate. That question is not in this case and we pretermit further consideration thereof.

Owen, 310 F.2d 884, 888 (8 Cir. 1962). We have reviewed the record in that light and are satisfied that a sound evidentiary basis existed for the allowances complained of. Evidently the court was convinced, as we are, that the Siebrings were not motivated by good faith in their repeated attempts to avoid the sanctions of the consent decree, and the court's injunction.

The judgment is in all respects affirmed.