**INTERDYNAMICS, INC., and Smiths Industries, Limited, Appellants,**

v.

**FIRMA WOLF, Arend Wolf, and Trans Tech, Inc.**

**No. 80–2254.**

United States Court of Appeals, Third Circuit.

Argued March 23, 1981.

Decided June 30, 1981.

Rehearing and Rehearing En Banc Denied July 23, 1981.

S. Joseph Fortunato, Pitney, Hardin & Kipp, Newark, N. J., for appellants; Albert E. Fey (Argued), George M. Dentes, Fish & Neave, New York City, Henry R. Lerner, Levisohn, Niner & Lerner, New York City, of counsel.

Lloyd McAulay (Argued), McAulay, Fields, Fisher, Goldstein & Nissen, New York City, for appellees; Harold Friedman, Kirsten, Friedman & Cherin, Newark, N. J., of counsel.

Before HUNTER, SLOVITER and WISDOM,* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Interdynamics, Inc. and Smith Industries, Ltd. appeal from an order of the district court holding that the sale by defendant Trans Tech, Inc. of an automobile rear-window defroster kit was not a contempt of a consent decree entered in a prior infringement action between the same parties. As part of that consent decree appellees admitted the validity of the patent on which suit was brought and admitted that they had sold a defroster kit that infringed that patent. When Interdynamics applied for a contempt order based on Trans Tech's subsequent sale of a modified kit, the district court found that the new kit did not infringe the patent and refused to find a contempt. Because the district court applied an incorrect legal standard in deciding the question of contempt, we reverse and remand, 493 F.Supp. 22.

* Hon. John Minor Wisdom, United States Court of Appeals Judge for the Fifth Circuit, sitting by designation.

## I.

Appellant Smiths Industries, a British corporation, owns a patent (Barnard U. S. Patent No. 3,757,087) for an automobile rear-window defroster. Appellant Interdynamics, Inc. is the United States licensee for the patent, markets the kit described in the patent, and has the right to sue for its infringement. This kit consists of a grid of metal heating strips sandwiched between a backing sheet and a top sheet of plastic. Installation of the defroster simply entails peeling off the backing sheet and placing the exposed strips and adhesive surface of the top sheet against the car window. The adhesive that covers the surface of the heating strips which contacts the glass is stronger than the adhesive attaching them to the top sheet on which they lie. Thus, when pressure is applied to the top sheet over the heating strips, the strips adhere to the window and the top sheet can be peeled away. This process leaves only the grid of heating strips on the surface of the window. This grid is then connected to the automobile's electrical system and heat can be generated by passing electricity through the heating elements.

Appellee Firma Wolf, a Dutch corporation owned by appellee Arend Wolf, developed a similar kit in Europe and sold it in the United States through appellee Trans Tech. The Wolf product differed from the Interdynamics kit in that the Interdynamics kit contains a single set of sheets supporting a full pre-arrayed grid of heating strips, while the Wolf product contained four sets of sheets. Each set in the Wolf product consisted of a backing sheet and a top sheet, between which were sandwiched two parallel heating strips also containing adhesives of different strengths. The sheets were long and narrow, and were packaged in coils. Installation of each set was performed as in the Interdynamics kit, except the four sets of heating strips had to be linked together as well as to the electrical system.

In March 1978 Interdynamics and Smiths filed an infringement action against Trans Tech, Arend Wolf, and Firma Wolf. At Trans Tech's instigation, a settlement was reached providing for a consent decree which was entered in that action on September 6, 1978. That decree provided in part:

2. Barnard United States patent 3,757,087 for HEATING ELEMENTS, owned by plaintiff Smiths Industries, Limited and solely licensed to plaintiff Interdynamics, Inc., is both good and valid in law and is enforceable;

3. Defendant Trans Tech, Inc. has infringed Barnard United States patent 3,757,087 by using and selling rear window defrosters identified with the trademark "JUSTLIKE" and manufactured by defendant Firma Wolf under the direction and control of defendant Arend Wolf.

Trans Tech agreed that it and those in privity with it should be permanently enjoined from infringing any claim of the patent. Pursuant to the settlement agreement, Interdynamics waived damages and gave Trans Tech the right to dismantle kits remaining in its inventory.

Soon after entry of the consent decree, Trans Tech began to market a modified version of the Wolf product, referred to by the parties as the Trans Tech product. In this product, the four coils did not contain separate top and backing sheets but were instead constructed in continuous rolls, much like rolls of conventional adhesive tape. The smooth back of each layer of plastic sheet served as the protective surface for the heating strips and adhesive surface in the layer above. Thus the need for a separate covering sheet was eliminated. The Trans Tech product was otherwise identical to the Wolf product.

In November 1978 Interdynamics applied for an order to show cause why Trans Tech should not be held in contempt for violating the consent decree and moved for an injunction against sale of the Trans Tech product. After a hearing later that month, the court stated that it would not reconsider whether the Wolf product was within the patent or whether the patent was valid. However, it concluded that it could not

decide whether the Trans Tech product was a contempt until it had held a full trial on whether the Trans Tech product infringed the patent.[1] The court scheduled a new hearing on the question of infringement, albeit emphasizing that these proceedings were a continuation of the prior action and not a new action for infringement.

Following the hearing on infringement, the court found that the Trans Tech product did not infringe the patent and was thus not a violation of the consent decree. The court stated that while it would not reconsider whether the Wolf product infringed the patent, which question had been determined in the consent decree, "it is clear that the Wolf product represented the outer boundary of infringement." The Trans Tech product, it found, differed significantly from that which the "patent can legitimately assert to fall within the scope of its claims." The Trans Tech product used heating strips "not in final configuration" and not "mounted between two sheets having different characteristics." The court stated that "[t]o argue that this product infringes the Barnard patent would amount to arguing that resistance wire and adhesive infringe," and concluded that the Trans Tech product neither infringed the patent nor violated the permanent injunction.

On appeal, Interdynamics contends that the district court erred in analyzing the question of contempt in this case as one of infringement in which the challenged Trans Tech product was compared with the claims of the patent. Interdynamics argues that the proper analysis of a claim of renewed infringement after entry of a consent decree requires, instead, comparison of the new product with the product previously admitted to be infringing. Only if the two are more than "merely colorably different" is there any need for further inquiry. Interdynamics argues also that assuming arguendo the question of infringement is relevant, then the Trans Tech product is infringing. Trans Tech and the other appellees respond that the district court properly undertook to determine whether the Trans Tech product infringes the Barnard patent. Because it does not infringe, they conclude, it cannot constitute a contempt of an injunction against infringement.

## II.

■■■ This court has not previously considered what course should be followed by a court which has entered a consent decree in an infringement action, after which the infringer begins to sell a modified version of the infringing product. Analysis must proceed along the path provided by established legal principles. In the first place a consent decree, although negotiated by the parties, is a judicial act. *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Such a decree possesses the same force with regard to res judicata and collat-

---

1. The court, at one point during the hearing, stated that the question under the applicable case law was whether the new device was "merely colorably different from the enjoined device or from the patent claims":

   [A] term like colorably different is a variable. It all depends on where the infringing product stood on the scale, let us say, of variables *in relation to the patent* and in relation to whatever divides the patent from those things which are outside of the scope. There are boundaries to every patent. If the original infringing device is, essentially, identical or, let us say, near the center of the area encompassed by that boundary, then, a new device would need be quite different, presumably, to fall outside the boundary.

   On the other hand, where the infringing device itself, although infringing, is near the boundary line of the scope, then, a much smaller difference may suffice to take the new product outside the boundary of the scope. (emphasis added)

   In fact, at the continued hearing the court undertook the inquiry which is utilized in infringement cases by comparing the product to the patent claims instead of the inquiry appropriate to contempt proceedings, which involves a comparison between the product previously admitted to infringe and the modified product at issue. *See Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir.), *cert. denied*, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); *Hopp Press, Inc. v. Joseph Freeman & Co.*, 323 F.2d 636, 638 (2d Cir. 1963). Appellee does not contend that the trial court made a product to product comparison, but claims instead that the issue of colorable difference is inseparable from the issue of infringement.

eral estoppel as a judgment entered after a trial on the merits. See generally, *Harding v. Harding*, 198 U.S. 317, 25 S.Ct. 679, 49 L.Ed. 1066 (1905); *Burgess v. Seligman*, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359 (1882). In patent cases as well, consent decrees entered in settlement of an infringement action are entitled to res judicata effect. *See Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 337–38 (7th Cir. 1969); *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir.), *cert. denied*, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965).

■■■ This leads, then, to the second step which is that a party violating a consent decree may be subject to the powers by which a court protects its judgments, including most notably the power of contempt under 18 U.S.C. § 401 (1976). This section provides:

> A court of the United States shall have power to punish by fine or imprisonment, at its direction, such contempt of its authority, and none other, as—
>
> . . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

See *United States v. Armour & Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230 (10th Cir.), *cert. denied*, 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968) (patent infringement decree); *Siebring v. Hansen*, 346 F.2d at 477 (patent infringement decree). Since failure to obey a court judgment is an indirect contempt, notice by an order to show cause and a plenary hearing are appropriate. *See, e. g., Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932) (patent). *See also* Dobbs, *Contempt of Court: A Survey*, 56 Cornell L.Rev. 183, 224 & n.162 (1971). This procedure was followed by the district court in this case.

■■ The central issue presented in such cases, however, is what legal and factual issues are before the court at such a hearing. When the consent decree admitted both validity and infringement, a defendant may not reopen the issue of whether the product previously admitted to infringe did in fact infringe. This preclusion follows from the prior admission, which has the effect of an adjudication. It must also follow that the validity and scope of the plaintiff's patent may not be reopened in the subsequent contempt proceedings, since this issue is equally foreclosed by the prior admission. *See Siebring v. Hansen*, 346 F.2d at 477, and cases cited therein. *See also* Note, *"To Bind or Not to Bind": Bar and Merger Treatment of Consent Decrees in Patent Infringement Litigation*, 74 Colum.L.Rev. 1322, 1334 (1974).

It may be that because these principles are well established, courts are rarely confronted with alleged contempts based squarely on adjudicated products. It is far more likely that the product at issue in the subsequent proceeding will be in some manner a modified version of the adjudicated product. In such a situation, the court must decide whether to treat the inquiry as one of infringement *de novo*, in which the issue of patent validity and scope may be raised, or whether a more limited inquiry is called for. Two somewhat conflicting concerns are implicated.

On one hand, support for allowing a party to raise the defense of invalidity of the patent after having previously admitted its validity may be found in the policies underlying the decision in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). There the Court held that federal patent policies may demand litigation of validity even where parties had entered into a contractual relationship precluding such litigation. *Id.* at 670–71, 89 S.Ct. at 1911. Furthermore, testing every modified product of an adjudicated infringer in contempt proceedings "would unnecessarily deter parties from marketing new devices that are legitimately outside the scope of the patent in question." *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d at 233.

On the other hand, if a patentee could only attack each modified product in a new infringement action, no matter how minimal the modification, such a requirement would significantly diminish the force of a consent decree as a judgment of the court. *Id.* In each new action, the patentee would

be put to the expense of reestablishing the scope of its patent and the patent's congruence with the allegedly infringing product. If these essential aspects of a patentee's rights could be reopened at the option of an infringer, patentees would lack incentive to enter into settlements. Moreover, there would result a "subversion of the deeply instilled policy of settlement of legitimate disputes . . . ." *Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.*, 489 F.2d 974, 978 (7th Cir. 1973) (enforcing a contractual settlement of an infringement suit). This could lead to more litigation because infringers would have an incentive to enter a consent decree and attempt to relitigate issues in a contempt proceeding. *Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775, 782 (6th Cir. 1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976). Such relitigation would frustrate the general public interest in finality of litigation, and in vindicating judicial authority. *See United States ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1002 (8th Cir. 1970).

These concerns in protecting settlements have led courts faced with a prior consent decree in a patent infringement action to place their principal reliance on effectuating the doctrine of res judicata. The decision in *Lear, Inc. v. Adkins, supra*, has been held inapplicable. As one court noted:

No consent decree was even involved in *Lear* . . . . [*Lear's*] derogation of contract law in favor of patent law is a far cry from allowing identical parties to reopen valid judicial [consent] decrees at their mere whim . . . . In the case of a consent decree, . . . we only look to the equities involved as to the particular parties and the public interest is not at stake.

*Schlegel Mfg. Co. v. King Aluminum Corp.*, 369 F.Supp. 650, 652 (S.D.Ohio 1973). *See also Wallace Clark & Co. v. Acheson Industries, Inc.*, 394 F.Supp. 393 (S.D.N.Y.1975).

■ The significant public interest represented by the doctrine of res judicata requires that where a prior consent decree between the same parties admitted validity of the patent, in a subsequent proceeding the court must focus on the products rather than on the patent itself. Thus the appropriate inquiry is whether the new product alleged to be a contempt is "merely colorably different" from the product previously conceded to infringe. *See, e. g., McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d at 233; *Siebring v. Hansen*, 346 F.2d at 477; *Hopp Press, Inc. v. Joseph Freeman & Co., Inc.*, 323 F.2d 636, 638 (2d Cir. 1963).

This was not the inquiry undertaken by the district court in this case. As noted in note 1, *supra*, instead of comparing the product which was the subject of the consent decree with the product which Trans Tech was then distributing, the court undertook to inquire whether the Trans Tech product infringed the Barnard patent.[2] The court treated the proceeding as a *de novo* infringement proceeding, thereby depriving plaintiff of the benefit of the prior decree in which plaintiff waived its right to damages for Trans Tech's admitted infringement by the distribution of the Wolf product. The correct procedure would have been for the court to have determined whether there were merely colorable differences between the Wolf product, which admittedly infringed the Barnard patent, and the Trans Tech product.[3]

### III.

In determining whether the changes made by the Trans Tech product were merely colorably different and therefore a

---

**2.** The district court believed that *Minerals Separation, Ltd. v. Miami Copper Co.*, 269 F. 265 (3d Cir. 1920), authorized an ancillary proceeding to determine whether a new product infringes a patent. In that case, the court stated that the remedies against infringement after decree are "damages and profits on accounting, attachment for contempt, and original bill." *Id.* at 268. We do not view that statement as inconsistent with the holding in this case, since that court had the beginning of the opinion concluded that the district court correctly held that the modifications were not mere colorable equivalents of the patent in question. *Id.* at 267. In any event, the only matter appropriately before the court was whether the district court had abused its discretion in denying a supplementary injunction.

**3.** The patent is not thereby insulated from attack. Such challenge, however, must come from a party who has not previously admitted the patent's validity and scope, and submitted

contempt, it is necessary to apply the well-established doctrine of equivalents. *Simmons Co. v. A. Brandwein & Co.*, 250 F.2d 440, 450 (7th Cir. 1957). This doctrine has been described by the Supreme Court as follows:

> [I]f two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

Reliance on the doctrine of equivalents to determine whether the new product is merely of "colorable difference" will protect the plaintiff's right to the benefit of the prior decree while at the same time reserving to the defendant the opportunity to take a new route to invent around the patent it has infringed. Even if the new product may infringe the patent, as long as it is more than "colorably different" the infringement should not amount to a contempt nor should it be tested in contempt proceedings. *Siebring v. Hansen*, 346 F.2d at 477.

Applying that doctrine in this case, it is necessary to compare the Trans Tech product with the Wolf product to determine the significance of the presence or absence of a separate backing sheet. Because this turns on the exhibits in the record and on uncontroverted evidence, without the need for credibility assessments or other special evaluation by the district court, we may decide the issue without remand. *See Hopp Press, Inc. v. Joseph Freeman & Co.*, 323 F.2d at 637.[4]

From our examination of the record, we conclude that the change in the structure of the coiled sheets between the Wolf and the Trans Tech products did not omit any function of the Wolf product. The same work (protecting the heating strips) was done in precisely the same way (by covering with a low adhesion surface) to accomplish the same result (installation of a defroster). The change between the two products seems, on this record, to produce no greater efficiencies, and to omit or alter no function. Without deciding what constitutes the outer boundary of what is "merely colorable," it is clear to us that the Trans Tech product is within that boundary.[5]

## IV.

For the reasons set forth above, we will remand this case to the district court so that it may enter a judgment of contempt against Trans Tech, and for such further proceedings as may be necessary.

---

itself to a judicial decree embodying that admission.

4. Counsel for appellee stated at oral argument before us that there is enough in the record for this court to make the decision on the issue of "colorable difference."

5. In view of our disposition of this matter, we do not decide whether the Trans Tech product infringes the Barnard patent. The district court decided that it did not because it found the Trans Tech product lacks the Barnard product's prearranged array of heating elements. We note that appellees do not place their principal reliance on that purported distinction, possibly because of their recognition that the spatial relationship between the heating elements in the Trans Tech product does not differ from that of the Wolf product, which they had previously admitted infringed the Barnard patent.