**SURE PLUS MANUFACTURING CO.,**
**Plaintiff-Appellee,**

v.

**Hy KOBRIN and Kobrin Manufacturing,**
**Inc., Defendants-Appellants.**

No. 82–5889.

United States Court of Appeals,
Eleventh Circuit.

Nov. 14, 1983.

Richard M. Saccocio, Fort Lauderdale, Fla., for defendants-appellants.

Joseph Zallen, Fort Lauderdale, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and GOLDBERG *, Senior Circuit Judge.

GODBOLD, Chief Judge:

Sure Plus Manufacturing Co. sued Kobrin and Kobrin Manufacturing Co. ("Kobrin") in 1978 alleging infringement of Sure Plus's patent on a vehicle mirror assembly. Before the case was tried Kobrin modified his allegedly infringing mirror assembly and applied for a patent on it as modified, citing the Sure Plus patent as part of the prior art.

After trial, in July 1980, while Kobrin's application on his modified assembly was still pending, the court held that Kobrin's original assembly infringed Sure Plus's patent and enjoined Kobrin from further infringement and from manufacturing, using, or selling an assembly similar to that found infringing. Neither the existence nor ef-

* Honorable Irving L. Goldberg, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

fect of Kobrin's pending application on his modified assembly was involved.

In August 1981 Sure Plus moved to hold Kobrin in contempt for violating the injunction. In December 1981, before this matter was heard, Kobrin was issued a patent on his modified assembly. In a hearing conducted in 1982 the court found Kobrin was in contempt by manufacturing and selling his modified assembly and enjoined him from making, using, or selling any assembly similar to the modified assembly.

Two issues are presented. The first is the effect of Kobrin's patent, issued after the first injunction but before the adjudication of contempt and the second injunction. This appears to be a question of first impression. The second is the sufficiency of the district court's consideration of differences between Kobrin's assembly first held infringing and his modified assembly.

We reverse and remand for further consideration.

## I. The facts

Sure Plus is the owner of U.S. Patent No. 2,563,638, issued February 16, 1971 and entitled "Mirror Assembly Having a Two-Piece Molding."

The original suit against Kobrin was tried without a jury and solely on the issue of infringement. The court examined exhibits and heard testimony on the mirror assemblies then being made and sold by Kobrin, in particular, two mirror assemblies, plaintiff's exhibits 3 and 4. The court concluded that these assemblies infringed the Sure Plus patent and on July 15, 1980 entered an order enjoining Kobrin from further infringement of the Sure Plus patent and from making, using, or selling a mirror assembly that was "substantially identical or similar" to plaintiff's exhibits 3 and 4. Neither the existence nor the effect of Kobrin's pending application on his modified assembly was involved. Kobrin did not appeal.

Later Sure Plus learned that Kobrin was making and selling his modified mirror assembly. In August 1981 Sure Plus filed a motion for an order to show cause why Kobrin should not be held in contempt for violating the 1980 injunction.

Kobrin's patent for a "Rear View Mirror," No. 4,303,308, was issued December 1, 1981.

The court held a hearing in June 1982 on Sure Plus's show cause motion.

## II. Refusal to rule on validity of the Kobrin patent

Kobrin argues that the grant of his patent created a presumption of its validity and that the court could not hold him in contempt and enjoin him from making and marketing his patented mirror assembly without first finding that his patent is invalid. This argument confuses the statutory requirements for patentability with the legal test applied in a patent infringement contempt proceeding. Also, it incorrectly assumes that the grant of a patent confers substantive rights on the patentee to make, use, and sell the patented item.

To obtain a patent a person must invent or discover something that is "useful," "novel," and "non-obvious." *See* 35 U.S.C. Secs. 101–103 (1976). When making its decision on a patent application, the patent office focuses on these particular requirements for patentability. In determining novelty and inventiveness, the patent office does not operate in a vacuum. Its decision is guided by the prior art. *Monroe Body Co. v. Herzog,* 13 F.2d 705, 706 (6th Cir.1926), *modified on other grounds,* 18 F.2d 578 (6th Cir.1927).

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. Sec. 103 (1976). In light of this requirement the grant of a patent implies that an invention transcends the prior art in some way. Congress recognized the expertise of the patent office on this matter when it provided for a legal presumption in favor of patent validity for any patent is-

sued by the patent office. *See* 35 U.S.C. Sec. 282 (1976) ("A patent shall be presumed valid.").

Kobrin is correct that his patent is entitled to this presumption of validity, but the validity of his patent was not an issue in the contempt proceeding. Rather the issues framed by Sure Plus's motion for a show cause order were whether the Kobrin mirror assembly infringed the Sure Plus patent and whether the modified Kobrin assembly was "substantially identical or similar" to the mirror assembly previously found to infringe. These issues depended for their resolution not upon the prior art or the novelty or inventiveness of Kobrin's invention but rather upon the scope of the claims in the Sure Plus patent and the differences between Kobrin's modified mirror assembly and the assembly previously found to be infringing. Neither of these relevant factors was a matter before the patent office. In *Herman v. Youngstown Car Mfg. Co.,* 191 F. 579, 585 (6th Cir.1911), the court explained:

> Another reason sometimes advanced for supposing that the structure of the second does not infringe the claim of the first patent is that the Patent Office has declared that a patentable difference exists. The premise is sound, but not the conclusion. In examining the second application, the Patent Office has no concern with the scope of the claim of the first, and does not and must not pay any attention thereto. It is concerned only with the early disclosure by the specification and drawings. Patentable difference does not of itself tend to negative infringement. It may just as well be based upon infringement, plus improvement; and improvement may lie in addition, simplification, or variance.

The truth of this observation becomes evident when one considers an improvement patent. A patent on Machine X would be infringed by a new machine that includes all elements of Machine X, plus a patentable improvement on it. Because Machine X does not "disclose" the improvement, the second machine would still be patentable. Nevertheless, if the second inventor desired to manufacture and market his patented and improved machine, he would have to get a license from the patentee of Machine X to avoid infringement, since the improved machine would include the elements claimed by the patent on Machine X. *See Zeigler v. Phillips Petroleum Co.,* 483 F.2d 858, 871 (5th Cir.), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973); *Matthews v. Koolvent Metal Awning Co.,* 158 F.2d 37, 40 (5th Cir.1946); *Freeman v. Altvater,* 66 F.2d 506, 512 (8th Cir.), *cert. denied,* 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 598 (1933). The grant of Kobrin's patent created no presumption that was relevant in the contempt proceeding.

■■ Kobrin's argument that the court could not prohibit the manufacture and sale of his patented mirror assembly unless it first found the patent invalid is based in part on an underlying contention that a patent confers on the patentee substantive rights to make, use, and sell the patented item. A patent is not the grant of a right to make or use or sell, nor does it imply such rights. The statute provides: "Every patent shall contain ... a grant to the patentee, his heirs or assigns, for the term of seventeen years, ... of *the right to exclude others* from making, using, or selling the invention...." 35 U.S.C. Sec. 154 (1976) (emphasis added). Likewise, in *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 480, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974), the Supreme Court said: "The patent laws promote [the Progress of Science and useful Arts] by offering a right of exclusion for a limited period as an incentive to inventors...." (referring to U.S. Const. art. I, Sec. 8, cl. 8). Thus, with or without a finding of invalidity, Kobrin was denied no statutory right.

### III. Failure to consider a possible difference

■ Kobrin correctly asserts that the court, in finding that Kobrin's modified mirror assembly was "substantially identical or similar" to the mirror assembly previously found to infringe, failed to consider

one of the differences between Kobrin's modified mirror assembly and the infringing assembly.

In proceedings for contempt for violation of an injunction against further infringement of a patent a court should first determine whether there is more than a colorable difference between the modified device and the enjoined device. In *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 233 (10th Cir.) (citations omitted), *cert. denied*, 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261 (1968), the court explained why this analysis is necessary:

> The question is presented as to how a patentee should be allowed to proceed when following a successful infringement suit the infringer modifies the infringing structure and continues as before. Allowing the patentee to proceed by a summary contempt proceeding in all cases would unnecessarily deter parties from marketing new devices that are legitimately outside the scope of the patent in question. On the other hand, to require in each instance the patentee to institute a new infringement suit diminishes the significance of the patent and the order of the court holding the patent to be valid and infringed. Obviously there must be a dividing point between those cases which should be handled by a summary contempt proceeding and those cases which should be more fully viewed in an infringement proceeding. Courts have uniformly held that the standard to be applied in determining the dividing point is whether the alleged offending device is "merely 'colorably' different from the enjoined device or from the patent."

Thus we must first examine the propriety of the court's determination that it could rule on Kobrin's modified mirror assembly in a summary contempt proceeding. *See Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 98 (3d Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir.), *cert. denied*, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965); *Hopp Press, Inc. v. Joseph Freeman & Co.*, 323 F.2d 636, 638 (2d Cir.1963); 8 A. Deller, Deller's Walker on Patents, Sec. 736 (1972).

■ A difference more than colorable is one that gives rise to some fair ground for doubt that the modified product is within the scope of the injunction. *American Foundry & Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d 116, 118–19 (8th Cir.1935); 8 A. Deller, *supra*, at Sec. 736. In determining whether the changes made by Kobrin were merely colorable, and therefore a contempt, it is necessary to apply the doctrine of equivalents. *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d at 98–99; *Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775, 781–82 (6th Cir. 1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 762 (1976). This doctrine has been described by the Supreme Court as follows: " '[I]f two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' " *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) (quoting *Machine Co. v. Murphy*, 97 U.S. (7 Otto) 120, 125, 24 L.Ed. 935 (1877) ).

■ Reliance on the doctrine of equivalents will protect Sure Plus's right to the benefit of its prior judgment while reserving to Kobrin the opportunity to invent around the Sure Plus patent. Even if Kobrin's modified mirror assembly infringes the Sure Plus patent, as long as it is more than colorably different the infringement should not amount to a contempt nor should it be tested in contempt proceedings. *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d at 99; *Siebring v. Hansen*, 346 F.2d at 477. When applying the doctrine of equivalents in the present case, it was necessary for the district court to compare the modified mirror assembly to the infringing assembly, while bearing in mind its previous construction (during the infringement litigation) of the claims in the Sure Plus patent and the scope of their protection. *Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d at 782; *American Foundry & Mfg. Co. v. Josam Mfg. Co.*, 79 F.2d at 120.

Turning to facial differences between plaintiff's exhibit 4 (the infringing mirror assembly) and Kobrin's modified assembly, there are several alterations. In the modified mirror assembly the convex mirror is angled away from the planar mirror by a bulky housing that stands out from the rest of the assembly. In the infringing mirror assembly the housing for the convex mirror lies flush with the planar mirror. Second, from a top frontal view, the modified assembly contains an upper mirror support shelf on each side of the convex mirror. When this assembly is taken apart, lower mirror support shelves are also visible. The infringing mirror assembly contains neither of these elements. Instead it appears to have the convex mirror glued in place to its housing.

The lower shelves would not have been visible during the contempt proceeding, since the court did not examine disassembled mirror assemblies before reaching its decision. Because the court, in applying the doctrine of equivalents, did not consider the presence of the lower support shelves in the modified assembly (not present in the infringing assembly) a remand is necessary to determine whether this difference is more than colorable. On remand the district court should consider this difference, bearing in mind its prior construction of the Sure Plus patent's claims. If the lower mirror support shelves are outside the scope of the prior construction, the modified assembly is more than colorably different from the infringing assembly, since there would be fair ground for doubt whether it is within the intended scope of the injunction.

The upper mirror support shelves and the angled housing for the convex mirror were visible at the contempt hearing. It is unclear from the record, however, whether the court compared these features with the corresponding features of the infringing assembly to determine whether they were more than colorably different. The order merely finds Kobrin's entire modified assembly "substantially identical or similar" to the infringing assembly. On remand,

the court should enter findings on its comparison of these two differences as well.

If any of the differences are found to be more than colorable, summary contempt proceedings would be inappropriate and Sure Plus would be relegated to an independent action for infringement.

### IV. Due process

 There was no due process violation. As we said above, Kobrin's patent conferred upon him no statutory right to make, use, and sell his invention but merely to exclude others from those activities. The district court did not deny Kobrin this statutory right; he may bring an infringement action against any party who makes, uses, or sells his patented invention without a license from him.

REVERSED and REMANDED for further consideration.